**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RORY MARKEL FOSTER,**
**aka Rory Marcel Foster,**

     **Plaintiff,**

     v.                      **CASE NO.  23-3090-JWL**

**JEFF ZMUDA, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  On April 4, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC"), directing Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC.  This matter is before the Court on Plaintiff's response (Doc. 8).

Plaintiff's claims relate to an Immigration and Customs Enforcement ("ICE") detainer lodged with the Kansas Department of Corrections ("KDOC").  Plaintiff alleges that ICE sent the KDOC four detainers to release the Plaintiff and three other inmates from the El Dorado Correctional Facility.  (Doc. 1, at 2.)  Plaintiff alleges that the KDOC discriminated against Plaintiff by releasing the other three inmates into ICE-DRO custody, but failing to release Plaintiff within 48 hours.  *Id.*  Plaintiff alleges that the four detainers are identical, except for the names and countries involved.  *Id.*  The other three inmates were being removed to South America, and Plaintiff's eventual removal will be to Jamaica.

Plaintiff alleges that he is being illegally detained in violation of K.S.A. § 22-4301.  *Id.* at

3. He also alleges the denial of a speedy trial, and violations of due process and equal protection. *Id*.

The Court found in the MOSC that Plaintiff failed to show that he is being illegally detained due to the 48-hour reference in the detainer. Plaintiff has not shown that he has been released from KDOC custody or that the 48-hour period has otherwise began to run. *See* 8 C.F.R. § 287.7(a) and (d).

The Court also found that Plaintiff failed to show that he is entitled to any current relief based on the detainer. Plaintiff is currently in KDOC custody serving his state criminal sentence.[1] The Immigration Detainer states that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." (Doc. 1–1, at 1.) The Court has dismissed Plaintiff's petition under 28 U.S.C. § 2241 seeking to initiate the "final order of removal" on his "past due" detainer and to assign the U.S. Marshals to transport him to the ICE-DRO. *See Foster v. Geither*, Case No. 23-3089-JWL, Doc. 7 (D. Kan. April 20, 2023) (finding Petitioner failed to show that he is "in custody" pursuant to the detainer for purposes of § 2241).

The Court found in the MOSC that Plaintiff is not entitled to relief under K.S.A. § 22-4401 because the Interstate Agreement on Detainers ("IAD") does not apply to ICE civil detainers. *Quintero v. Immigration & Customs Enforcement*, Civil Action No. GLR–12–1877, 2012 WL 4518083, at *1 (D. Md. Sept. 27, 2012) (denying request to compel ICE to adjudicate immigration status and stating that "[t]he concept of prosecutorial discretion as applied to immigration enforcement activity such as a decision to place a particular alien in removal

---

[1] Petitioner attaches a March 21, 2023 response to his grievance submitted at LCF which informs Petitioner that he "will go into ICE custody if you/when [sic] release from KDOC." (Doc. 1–1, at 3.) The Kansas Adult Supervised Population Electronic Repository ("KASPER") shows Petitioner's current status as "Incarcerated" with no earliest possible release date noted. *See* https://kdocrepository.doc.ks.gov/kasper/search/detail?kdocNumber=92016 (last visited April 20, 2023).

proceedings has specifically been reaffirmed by the Supreme Court") (citations omitted). "Immigration deportation proceedings are not criminal proceedings[,]" but rather "are civil in nature and are not conducted by a court of the United States." *Angeles v. INS*, No. 3:10–cv–00640–HDM–RAM, 2010 WL 4791747, at *1 (D. Nev. Nov. 18, 2010) (citing *Argiz v. United States Immigration*, 704 F.2d 384, 387 (7th Cir. 1983)).

Plaintiff alleges discrimination because three other inmates were released into ICE-DRO custody. To allege an equal protection violation, a plaintiff must state facts indicating that defendants treated him differently than other similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

The Court found in the MOSC that Plaintiff has not alleged that the other three inmates were convicted of the same offenses; that his sentence was completed on the exact same date as the other inmates; or that they were otherwise similarly situated in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted).

Plaintiff's response fails to address the deficiencies noted in the MOSC and fails to show good cause why his Complaint should not be dismissed. Instead, Plaintiff raises new arguments in his response. Plaintiff alleges in his response that the Defendants have denied him due

process, committed various crimes, and somehow joined a criminal conspiracy to defraud Plaintiff of his property, "giving such property to the Kansas Department of Corrections, illegally contracting the Secured Party to an institution formed by his fellowman without his: free; prior; or informed consent" and their actions constitute treason, "an act of Mixed War," and various other crimes.  (Doc. 8, at 3–7.)

Plaintiff also alleges, for the first time in his response,[2] that Defendants are in violation of international treaties, citing regulations dealing with international offender transfers.  (Doc. 8, at 3, 7–8; Doc. 8–1.)  The regulations provide for an inmate, who is a citizen of a treaty nation, to indicate on an appropriate form whether he or she is interested in transferring to the country of citizenship.  *See* 28 C.F.R. 527.43.  Section 527.44 deals with requests "for transfer to country of which inmate is a citizen or national," and provides for an inmate "who is eligible" to submit the inmate's interest in serving their sentence in the country of which the inmate is a citizen or national. 28 C.F.R. § 527.44.  However, the regulations also provide that inmates must meet specific requirements in order to be eligible.  *Id*. at § 527.42.  The regulations provide that the inmate must "indicate the inmate's interest by completing and signing the ***appropriate form*** and giving it to Bureau staff for further processing."  28 C.F.R. § 527.44 (emphasis added).

Plaintiff has not alleged that he has submitted the proper form, but rather states that he spoke with the warden, notified the warden of Plaintiff's "private-status & illegal detention of the Sovereign Plaintiff," and then sent a letter to the warden that included a copy of the "Final Disposition of Detainer."  (Doc. 8, at 11); *see also* KDOC IMPP 11-105 at Doc. 8–1, at 14–15 (providing that offenders indicate their interest or lack of interest in a transfer on the Transfer Inquiry Form #11-105-001).  In addition, courts have found that "[b]ecause neither the Act nor

---

[2]  Plaintiff refers to this argument as "Count II" in his response.  (Doc. 8, at 7.)  He also references a Count III.  *Id*. at 8.  However, his original Complaint did not contain a Count II or a Count III.  He marked N/A next to those counts on his form Complaint.  (Doc. 1, at 3, 5.)

the Treaty sets out 'particularized standards or criteria,' . . . to guide the Attorney General in making transfer decisions, neither the Act nor the Treaty places any 'substantive limitations on official discretion.'" *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991), *cert. denied* 503 U.S. 995 (1992) (citations omitted);[3] *see also* KDOC IMPP 11-105 at Doc. 8–1, at 14 (indicating that offenders are informed of the possibility of transfer under the International Treaty Agreement and informed that such transfers are a privilege and not a right).

"[C]onstitutional due process would be implicated only if the prison subjected an inmate to restraints that posed an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Al-Turki v. Tomsic*, 926 F.3d 610, 620–21 (10th Cir. 2019) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)) (also stating that approval of transfer by the State of Colorado, Saudi Arabia, and the DOJ, was discretionary). Plaintiff has not made such a showing. *See id*. at 616–17 (noting where state prisoner sought transfer to prison in his home country, prisoner must show that keeping him in the state prison subjected him to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" which he "cannot do"); *see also Bagguley v. Matthews*, 1992 WL 160945, at *2 (D. Kan. 1992) (noting that two Circuits have rejected the claim that prisoners seeking international prison transfers enjoy a liberty interest arising under the due process clause) (citations omitted).

This Court has found in Plaintiff's § 2241 action that he has failed to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28

---

[3] The court in *Bagguley* explained that:

> In 1985, the United States and the United Kingdom ratified the Convention on the Transfer of Sentenced Persons, T.I.A.S. No. 10824, 22 I.L.M. 530 (1983) ("the Convention" or "the Treaty"), which provides for the transfer of foreign prisoners to their home countries. The Transfer of Offenders to and from Foreign Countries Act, 18 U.S.C. § 4100 *et seq.* (1988) ("the Act"), authorizes the Attorney General to implement the Convention.

*Bagguley*, 953 F.2d at 661.

U.S.C. § 2241(c)(3).  *See Foster v. Geither*, Case No. 23-3089-JWL, Doc. 7 (D. Kan. April 20, 2023).  Likewise, Plaintiff's response in this action fails to address the deficiencies noted in the MOSC and fails to show good cause why his Complaint should not be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated April 21, 2023, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**